**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**TRAVELERS CASUALTY & SURETY**
**COMPANY OF AMERICA**                                                **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 2:13-CV-101-KS-MTP**

**HUB MECHANICAL CONTRACTORS, INC.,**
**GEORGE C. CURRY, CINDY B. CURRY,**
**ARTHUR C. HENDERSON, and**
**HUB REFRIGERATION & FIXTURES, INC.**                          **DEFENDANTS**

**and**

**GEORGE C. CURRY, JR., CINDY CURRY, and**
**HUB REFRIGERATION & FIXTURES, INC.**        **THIRD-PARTY PLAINTIFFS**

**V.**

**RICHARD TEB JONES and**
**BANCORPSOUTH INSURANCE SERVICES, INC.**        **THIRD-PARTY DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Hub Refrigeration & Fixture Co., Inc.'s, ("Hub

Refrigeration") Motion for Summary Judgment [259] and Cindy Curry's ("Mrs. Curry") Motion

for Summary Judgment [264]. Also pending before the Court are Travelers Casualty & Surety

Company of America's ("Travelers") Motion for Summary Judgment on its Claim for Fraud

Against George Curry ("Motion for Summary Judgment for Fraud") [269], Motion for Partial

Summary Judgment Against George Curry ("Motion for Partial Summary Judgment") [263],

Motion for Summary Judgment as to Counterclaims [267], Motion to Strike Affidavit of George

Curry ("Motion to Strike") [297], and Motion to Exclude Expert Testimony ("Motion to

Exclude") [260]. Having considered the submissions of the parties, the record, and the

applicable law, the Court finds that:

1)      Hub Refrigeration's Motion for Summary Judgment [259] should be granted;

2)      Mrs. Curry's Motion for Summary Judgment [264] should be granted;

3)      Travelers' Motion for Summary Judgment for Fraud [269] should be granted in part and denied in part;

4)      Travelers' Motion for Partial Summary Judgment [263] should be denied;

5)      Travelers' Motion for Summary Judgment as to Counterclaims [267] should be granted;

6)      Travelers' Motion to Strike should be denied as moot; and

7)      Travelers' Motion to Exclude should be denied as moot.

## I.  BACKGROUND

Travelers filed its original complaint against George C. Curry, Jr., ("Mr. Curry") and Mrs. Curry (collectively "the Currys") on May 15, 2015.  Travelers added Hub Refrigeration as a defendant in its Amended Complaint [184] on April 9, 2015.  Travelers contends that all three are liable to indemnify its losses under the construction bonds issued to Hub Mechanical Contractors, Inc., in July 2009, under an Indemnity Agreement [184-1] executed in February 2005.  The Currys' liability stems from their alleged personal execution of the agreement, while Hub Refrigeration's liability flows from Mr. Curry's ownership, as the agreement provides that indemnitors under the agreement includes any "legal entity in which one or more [of the Currys] are involved."  (*See* Indemnity Agreement [184-1] at p. 1.)

On February 11, 2005, Mr. Curry executed the Indemnity Agreement through Richard Teb Jones ("Jones"), an agent of Travelers.  Mr. Curry admits to having forged his wife signature on the advice of Jones, as he knew she would not consent to signing and Travelers would not issue bonds for Hub Mechanical without her signature.  (*See* Mr. Curry Depo. [270-3]

at 25:19-23.)  Mr. Curry, though, contends that he sent a letter to Jones terminating the Indemnity Agreement in March 2008.  Travelers and Jones both deny having received this letter.  (*See* Jones Depo. [290-14] at 77:9-17.)

An indemnity claim was filed against Hub Refrigeration in Travelers' Amended Complaint [184] in April 2015.  Hub Refrigeration is wholly owned by Mr. Curry, and was brought in as an indemnifier under the Indemnity Agreement as a "legal entity in which one or more [of the Currys] are involved."  (*See* Indemnity Agreement [184-1] at p. 1.)  Travelers was aware that Mr. Curry was involved in some capacity with Hub Refrigeration in February 2011.  (*See* Burkhardt Notes [259-4].)

In July 2009, Travelers issued two bonds, a Payment Bond and a Performance Bond, to Hub Mechanical after it entered into a subcontract agreement with Rod Cooke Construction ("Rod Cooke").  Travelers knew that Hub Mechanical was in default on these bonds at least as of February 2, 2011.  (*See* E-mail [259-2].)  Travelers brought suit for the indemnification of its losses under these bonds, for reimbursement of all amounts paid to Hub Mechanical's subcontractors, suppliers, and materialmen on the Rod Cooke Project, for attorneys' fees and costs, and for fraud.  On August 8, 2011, Travelers filed a UCC Financing Statement, placing a lien on all personal property of the Currys.  (*See* UCC Financing Statement [290-15].)  In their Answer [193] to the Amended Complaint, the Currys and Hub Refrigeration (collectively "Defendants") filed counterclaims against Travelers for abuse of process, intentional tort, intentional interference with business relations, and conspiracy.

## II. MOTIONS FOR SUMMARY JUDGMENT [259][263][264][267][269]

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.'"  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004)).  Summary judgment is mandatory when, "after adequate time for discovery and upon motion, . . . a party . . . fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  However, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  If the movant meets his burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson*

*Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue

exists, "the court must view the facts and the inferences to be drawn therefrom in the light most

favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However,

"[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated

assertions, and legalistic argumentation do not adequately substitute for specific facts showing a

genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citing *Sec. & Exch.*

*Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### B.      Hub Refrigeration's Motion for Summary Judgment [259]

In its motion, Hub Refrigeration argues that the indemnity claim Travelers has brought

against it is time-barred by the applicable statute of limitations.  There are no factual disputes

discernible from the record as to when Travelers knew Hub Mechanical was in default, when it

knew Mr. Curry was involved with Hub Refrigeration, and when it filed suit against Hub

Refrigeration.  Travelers knew that Hub Mechanical was in default at least as of February 2,

2011, which is the date of the e-mail from Travelers' employee Michael Burkhardt asking for a

formal default letter from Hub Mechanical.  (*See* E-mail [259-2].)  Travelers was also aware as

of February 18, 2011, that Mr. Curry was involved with Hub Refrigeration.  (*See* Burkhardt

Notes [259-4].)  Though Travelers specifically states in its opposition to the motion that it is

"neither denying nor admitting" these dates, it also does not point to any evidence in the record

that would raise a factual dispute as to them.  (*See* Response [280] at p. 3, n.1.)  Travelers did not

file suit against Hub Refrigeration until it filed its Amended Complaint [184] on April 9, 2015.

Travelers argues that its injury did not accrue, and the statute of limitations did not begin

to run, until April 23, 2015, as that is when Hub Refrigeration filed its Answer [193] and refused

to concede to the indemnity demand Travelers made in its Amended Complaint [184].  Travelers

contends that its claim against Hub Refrigeration is a breach of contract claim, and the injurious breach did not occur until Hub Refrigeration refused the indemnity demand in its Answer [193]. There are multiple problems with Travelers' theory. First and foremost, the injury that is the basis for a claim cannot be caused by the filing of a responsive pleading to that claim. To allow such a basis for a claim would be to create an untenable paradox. Second, Travelers has not brought a breach of contract claim against Hub Refrigeration—it has brought an *indemnity* claim. Though its indemnity claim may be based on the Indemnity Agreement, a contract between Travelers and the Currys, Travelers does not have a breach of contract claim against Hub Refrigeration. Hub Refrigeration is neither a party to nor a third-party beneficiary of the Indemnity Agreement. If Travelers' claim against Hub Refrigeration is a breach of contract claim as it argues, it would have no claim against Hub Refrigeration because it has no contract with Hub Refrigeration.

As stated above, Travelers' claim against Hub Refrigeration is an indemnity claim. Under Mississippi law, there is no specific statute of limitations for an indemnity claim. As such, the general three-year statute of limitations applies. Miss. Code Ann. § 15-1-49(1). To determine when indemnity under the Indemnity Agreement accrued, the Court looks to the terms of the agreement itself. *See Hopton Bldg. Maint., Inc. v. United Parcel Serv., Inc.*, 559 So.2d 1012, 1013-14 (Miss. 1990). Travelers relies on *C & I Entertainment, LLC v. Fid. & Deposit Co. of Md.*, to stand for the proposition that demand must be given before indemnity liability is accrued. No. 1:08CV16, 2008 WL 4755413 (N.D. Miss. Oct. 27, 2008). However, in that case, the indemnity agreement contained conditions that had to be met before indemnity was warranted. *See id.* There are no such conditions in the Indemnity Agreement in this case. The terms merely state that "indemnifers shall exonerate, indemnify and save Company from and

6

against all Loss." (*See* Indemnity Agreement [184-1] at ¶ 3.)  Because Travelers prepared the

agreement, the Court, applying Mississippi law, construes the contractual ambiguity as to the

conditions necessary for indemnity liability to attach more strongly against it.  *See Banks v.*

*Banks*, 648 So.2d 1116, 1121 (Miss. 1994) ("There is also the universal rule of construction that

when the terms of a contract are vague or ambiguous, they are always construed more strongly

against the party preparing it.") (citations omitted).  Because the Indemnity Agreement contains

no conditions for Travelers to claim indemnity, the Court finds that there are none and indemnity

liability attaches under the Indemnity Agreement once Travelers has incurred a loss.

Therefore, whatever obligation to indemnify Hub Refrigeration had under the Indemnity

Agreement accrued once Travelers had incurred any loss in relation to the bonds issued on

behalf of Hub Mechanical.  This occurred when Hub Mechanical entered into default on the

subject bonds in February 2011.  Travelers had three years to file suit against Hub Refrigeration

for indemnity under § 15-1-49(1).  Even if Travelers did not know the extent of Mr. Curry's

involvement with Hub Refrigeration, it had enough information at the time of the default to

know that there was some involvement and to put it on notice that Hub Refrigeration may be

liable to it for indemnity.  Therefore, the statute of limitations would have expired in February

2014, making Travelers' claim against Hub Refrigeration on April 9, 2015, untimely.

Travelers argues that it should be allowed, at minimum, to bring suit for losses incurred

after April 9, 2015, as its losses in connection with the subject bonds have been ongoing in the

form of attorneys' fees and other litigation expenses.  The Court does not find this argument to

be persuasive.  Travelers' indemnity cause of action accrued once it suffered loss due to Hub

Mechanical's default on the subject bonds.  The fact that the damages from Travelers' injury

continues to be ongoing because of litigation does not indefinitely extend its ability to claim indemnity on the basis of its losses under these bonds.

Therefore, since the statute of limitations has run on Travelers' indemnity claim against it, Hub Refrigeration's Motion for Summary Judgment [259] is **granted.**

### C.    Mrs. Curry's Motion for Summary Judgment [264]

Mrs. Curry contends that she is entitled to summary judgment as the only claim against her is through the Indemnity Agreement, which she did not sign and on which Mr. Curry admitted in his sworn deposition that he forged her signature.  Travelers argues that Mrs. Curry cannot be dismissed from this action through summary judgment because she admitted to executing the Indemnity Agreement in her Amended Answer [193] and because her notarized signature was self-authenticating under Federal Rule of Evidence 902(8).  The Court does not find Travelers' arguments persuasive and grants Mrs. Curry's Motion for Summary Judgment [264].

First, the Court notes that Mrs. Curry's admission in her answer is not binding on her under the doctrine of judicial admissions because the Amended Answer clearly states that Mr. Curry signed her signature.  (*See* Amended Answer [193] at p. 3.)  When a defendant directly denies a proposition in her answer that another paragraph in her answer could be interpreted as admitting, the admission is a not a "deliberate, clear and unequivocal statement[] . . . constitut[ing a] conclusive judicial admission[]" that is binding on the defendant.  *Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992).  The perfunctory and apparently inadvertent admission of the paragraph pertaining to the execution of the Indemnity Agreement does not hold enough weight to defeat summary judgment when combined with the clear statement denying signing the agreement in the Amended Answer [193] and the sworn

8

statements of Mr. Curry admitting that he did forge his wife's signature, statements that, rather than disputing, Travelers uses in its own motion for summary judgment.  *See id.*

As for Travelers' argument under Federal Rule of Evidence 902(8), this rule allows for the admission of evidence without sponsoring testimony establishing its authenticity.  *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 551 (D. Md. 2007).   Even if the notarized signature was enough to raise a genuine issue of fact sufficient to defeat summary judgment, it is clear that Travelers does not intend to dispute the forgery at trial.  In fact, far from disputing it, Travelers has asked the Court to conclusively rule on this issue in its Motion for Summary Judgment as to Fraud [269], a request that the Court finds should be granted.  *See infra*, Part II.D.  Because there is no genuine dispute as to whether Mr. Curry forged his wife's signature and because Mrs. Curry would only be liable to Travelers through the Indemnity Agreement which she did not sign, the Court finds that Mrs Curry's Motion for Summary Judgment [264] should be **granted**.

### D.      Travelers' Motion for Summary Judgment for Fraud [269]

Travelers argues that there are no genuine disputes as to the facts supporting its claim of fraud against Mr. Curry and that it is entitled to summary judgment as to that claim. Alternatively, it asks the Court to grant partial summary judgment with regards to the elements of the fraud claim that are undisputed.  Because there are genuine disputes as to the injury element, the Court finds that it must deny Travelers request for summary judgment.  However, since most of the elements are undisputed, the Court grants summary judgment as to those elements.

Under Mississippi law, there are nine element that must be established for a finding of fraud:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Martin v. Winfield*, 455 So.2d 762, 764 (Miss. 1984) (citations omitted).  Mr. Curry does not dispute that he knowingly forged his wife's signature, which was a knowingly false representation that his wife approved of the Indemnity Agreement and which was made with the purpose of Travelers believing the agreement was approved by Mrs. Curry and issuing bonds to Hub Mechanical.  Mr. Curry also admitted in his sworn testimony that these bonds would not have been issued without Mrs. Curry's signature on the Indemnity Agreement.  (*See* Mr. Curry Depo. [270-3] at 25:19-23.)  Furthermore, Stacy O'Neal's affidavit states that Travelers relies on signatures on indemnity agreements before issuing bonds, and Mr. Curry has put forward no evidence to show a genuine dispute of fact as to this reliance.  (*See* O'Neal Affidavit [270-1] at p. 3 ¶ 9.)  Therefore, there is no genuine dispute that there was (1) a representation, (2) that was false, (3) that this representation was material to the issuance of the bonds in question, (4) that Mr. Curry knew it was false, (5) that Mr. Curry intended that Travelers would take the signature as a true statement that Mrs. Curry had ratified the Indemnity Agreement and issue the bonds, and (7) that Travelers relied on the forged signature.  Because the Court is allowed to grant partial summary judgment in order "to root out, narrow, and focus the issues" for trial, the Court will grant Travelers' motion with respect to these elements of its fraud claim against Mr. Curry. *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).

Mr. Curry argues, though, that Travelers had imputed knowledge of the forged signature, that it did not have the right to rely on the signature, and that Travelers suffered injury as a result of the forgery.

Mr. Curry agrees with all the factual assertions Travelers makes in support of its arguments that it did not have knowledge of the forgery and, because of its lack of knowledge, had the right to rely on the forged signature. The only arguments Mr. Curry asserts are legal arguments about whether Jones' knowledge of the forgery can be imputed to Travelers. As this is a matter of law, it is appropriate for the Court to decide on summary judgment.

"Although the knowledge of an agent is generally imputed to his principal, the Mississippi Supreme Court has long recognized an exception to the general rule when an agent acts adversely to his principal's interests." *In re Evans*, 460 B.R. 848, 890 (Bankr. S.D. Miss. 2011) (citing *Scott Cnty. Milling Co. v. Powers*, 73 So. 792, 793 (Miss. 2012)). "[W]here the agent is engaged in a transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal will not be charged with knowledge the agent acquired therein" *Scott Cnty. Milling*, 73 So. at 793. Mr. Curry does not dispute that by following Jones' instruction and forging his wife's signature, he and Jones entered into a scheme to defraud Travelers, making the adverse interest exception applicable. He argues, however, that because Jones was the sole person entrusted with executing the Indemnity Agreement on Travelers' behalf, then an exception to this exception applies. This exception, called the sole-representative doctrine, has never been explicitly adopted by a Mississippi court. However, Mr. Curry cites *Anderson v. Yates* to stand for this proposition. 99 So. 499 (Miss. 1924).

In *Anderson*, the Mississippi Supreme Court adopted the rule that "where one of the two innocent persons must suffer because of the fraudulent conduct of a third person, the loss shall fall upon the one whose acts have clothed the third party with power to commit the fraud." 99 So. at 500. This rule is inapplicable to the case at bar. The rule from *Anderson* contemplates a situation where a third-party agent defrauds the two innocent parties of a transaction, one of

11

which is the agent's principal, and places the liability for the agent's fraudulent actions in that situation on the principal.  Here, of the two parties who are subject to the execution of the Indemnity Agreement, only Travelers is an innocent party, with Mr. Curry conspiring with the third party, Jones, to forge Mrs. Curry's signature on the agreement.  Furthermore, Mr. Curry argues that Jones was acting as his agent at the time as well as Travelers' agent, so it could be said that Mr. Curry was the one who "clothed [Jones] with power to commit the fraud."  (*See* Third Party Complaint [126] at p. 3 ¶ 10.)  Therefore, whatever exception to the adverse interest exception exists under Mississippi law under *Anderson*, it is inapplicable here, and Jones' knowledge cannot be imputed to Travelers.  If it had no knowledge of the forgery, Travelers also had the right to rely on the authenticity of the signature.  The Court therefore grants summary judgment as to the (6) ignorance of the falsity and (8) right to rely elements of the fraud claim as well.

Mr. Curry's final argument is that Travelers should not be granted summary judgment as to the injury element because there is a factual dispute over whether Mr. Curry had terminated the Indemnity Agreement in March 2008, before the subject bonds were issued in July 2009.  (*See* Termination Letter [286-2]; Rod Cooke Bonds [184-2].)  As there is a factual dispute over whether the Indemnity Agreement was in force when the bonds were issued, the injury Travelers suffered from Mr. Curry's forgery is in dispute.  As such, the Court cannot grant summary judgment as to the consequent and proximate injury element of the fraud claim.

Therefore, Travelers' Motion for Summary Judgment for Fraud [269] is **granted in part** and **denied in part**.  It is **granted** as to the following elements of Travelers' fraud claim: (1) representation, (2) falsity, (3) materiality, (4) Mr. Curry's knowledge of its falsity, (5) Mr. Curry's intent, (6) Traveler's ignorance of its falsity, (7) Travelers' reliance on its truth, and (8)

Travelers' right to rely on the representation's truth.  It is **denied** as to the injury Travelers has

suffered as a result of Mr. Curry's actions.

### E.        Travelers' Motion for Partial Summary Judgment [263]

Travelers argues in its Motion for Partial Summary Judgment [263] that it is entitled to

judgment as a matter of law against Mr. Curry as to its losses under the Payment Bond issued in

the Rod Cooke Project.  Mr. Curry's sole defense against the indemnity claim is that he

terminated his indemnity obligation in the March 2008 letter.  Travelers contends, though, that

even if this letter were sent and received, it pertains only to the Performance Bond, making Mr.

Curry still liable under the Payment Bond.

Under the terms of the Indemnity Agreement, termination takes effect thirty days after

Travelers is "giv[en] written notice . . . of Indemnitors' intent to terminate."  (*See* Indemnity

Agreement [266-1] at p. 2.)  The question of how this contractual term should be construed is a

question of law which the Court must decide.  *See Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*,

908 So.2d 107, 109 (Miss. 2005) ("Questions concerning the construction of contracts are

questions of law that are committed to the court rather than questions of fact committed to the

fact finder.") (citations and internal quotations omitted).  Mr. Curry claims that the following

language from his letter dated March 27, 2008, gave written notice of his intent to terminate the

Indemnity Agreement:

> Teb,
> I have sold all interest that I may have owned in Hub Mechanical Contractors.  As
> per Stacy's request I summit [sic] this letter as official Notice that George Curry
> Jr. and Cindy Curry will no longer be responsible for any performance bonds
> issued on Hub Mechanical Contractors behalf after March 27, 2008.

(*See* Termination Letter [288-3].)  Mr. Curry argues that the intent behind his notice matters and

that he intended "performance bonds" to mean all construction bonds.  However, under the terms

of the Indemnity Agreement, it is written notice of such intent that terminates the indemnity obligation, *not* the intent itself.  The written notice plainly states that Mr. Curry will no longer be responsible for *performance* bonds.  The subject bonds are clearly labeled "Labor and Material Payment Bond" and "Performance Bond."  If the letter was meant to convey notice that Mr. Curry was terminating his indemnity obligation on all construction bonds, to defeat summary judgment, he would have to adduce some evidence to show there is a genuine issue of material fact concerning whether Travelers could take the language of the letter to mean something other than its plain meaning.

Mr. Curry puts forth two arguments attempting to show that disclaiming liability for all performance bonds could be taken to mean all construction bonds.  First, he claims that Travelers, in its Memorandum in Support of its Motion for Summary Judgment [268], stated that it was an undisputed fact that Rod Cooke, the primary contractor, made a claim on the Performance Bond once Hub Mechanical was in default.  This says nothing, however, about the classification of the Payment Bond as a "performance bond," as Travelers' losses on the Payment Bond were not paid to Rod Cooke but to the companies that supplied material and labors for Hub Mechanicals' work.  (*See* Burkhardt Affidavit [266-4] at ¶ 10.)  Rod Cooke, then, did not make a claim on the Payment Bond, and the assertion that it made a claim on the Performance Bond does not mean that Travelers understood "performance bonds" to include payment bonds.

In his next argument, Mr. Curry argues that § 85-7-185 of the Mississippi Code stands for the proposition that a payment bond is a performance bond.  This section of the Code was repealed in 2014.  The text of the repealed § 85-7-185, though, states that payment for the persons furnishing labor or materials shall be read into a performance bond when there is no

provisions for such payment.  Section 85-7-431 provides that, when there is a payment bond in place, there is no right to payment under the performance bond.  Therefore, under Mississippi law, these two types of bonds, at times, are actually the same bond.  As such, Mr. Curry's attempt to argue that the term "performance bonds" includes payment bonds under Mississippi law has some merit, and the question of whether his use of the term included the Payment Bond should go to the jury.  Therefore, the Court **denies** summary judgment as to his indemnity liability under the Payment Bond.

###### F.     Travelers' Motion for Summary Judgment as to Counterclaims [267]

Defendants assert four counterclaims against Travelers:  abuse of process, intentional tort, intentional interference with business relations, and conspiracy.  Travelers argues in its Motion for Summary Judgment as to Counterclaims [267] that Defendants have failed to meet their burden of proof on all four of these claims and that it is therefore entitled to summary judgment.  The Court reviews each of these claims in turn.

###### 1.     Abuse of Process

The Mississippi Supreme Court has held that there are three elements to an abuse of process claim:  "(1) the party made illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *Ayles ex rel. Allen v. Allen*, 907 So.2d 300, 303 (Miss. 2005) (citing *McLain v. West Side Bone & Joint Ctr.*, 656 So.2d 119, 123 (Miss. 1995).

The first element of an abuse of process claim asks "whether the procedure at issue was used not to enforce some legal remedy that the process was designed to afford, but was instead used to force the plaintiff to do some collateral thing which he could not legally and regularly be compelled to do." *Wilcon, Inc. v. Travelers Indem. Co.*, 654 F.2d 976, 984 (5th Cir. 1981)

(citation and internal quotations omitted).  To establish this element, "the plaintiff need show only that the defendant acted 'primarily' to accomplish an immediate purpose for which the process was not designed."  *Id.*  Therefore, to survive summary judgment, Defendants must show that there is evidence to support the accusation that the legal process used was for the purpose of something other than the indemnification of its losses on the subject bonds.

The process Defendants allege was used illegally is the filing of the Amended Complaint [184] and the adding of Hub Refrigeration as a party in the lawsuit.  Defendants claim that adding Hub Refrigeration as a party was both time-barred and superfluous, as Travelers would collect whatever interest Mr. Curry had in Hub Refrigeration if it won the suit anyway.  Defendants quote *Wilcon* for standing for the proposition that "a party seeking indemnity has made an illegal use of a legal process where that party 'sought not primarily to protect its ability to collect on its indemnity claim, but sought instead to force a quick settlement' on a different claim."  (*See* Brief in Opposition [291] at p. 7.)  The full quote from *Wilcon*, however, reads:

> Wilcon might have established this element by showing, for example, that Travelers sought not to protect its ability to collect on its indemnity claim, but sought instead to force a quick settlement of Wilcon's claim for 'interference with business relations.'  If such were the case Travelers could be said to have used the attachment to extort a settlement *on an unrelated claim* a purpose which clearly is not envisioned in the attachment statute.

654 F.2d at 985 (emphasis added).  This hypothetical ruling by the Fifth Circuit is inapplicable in this case.  The indemnity claim brought against Hub Refrigeration is far from unrelated to the indemnity claim against the Currys, as it is indisputably based on the same events and the same Indemnity Agreement.  Furthermore, the fact that the Court has found the indemnity claim against Hub Refrigeration to be time-barred does not change the purpose behind the filing of the claim, as a claim does not give rise to an abuse of process claim merely because it is

16

unsuccessful. *Port Distrib. Corp. v. Mitchell*, 157 So.2d 51, 54 (Miss. 1963) (citing *Mars v. Germany*, 100 So. 23 (Miss. 1924)). Even if the Court were to take as true Defendants' conclusory assertion that adding Hub Refrigeration to the indemnity claim was done with the sole purpose of forcing a settlement on the indemnity claim, the primary purpose behind the claim was to receive indemnification for Travelers' losses, which would include receiving a settlement payment on the indemnity claim.

Because Defendants have produced no evidence to establish that Travelers made illegal use of a legal process, they have not met their burden as to the first element of their abuse of process claim. The Court need not consider whether they've met their burden on the other two elements, as summary judgment must be awarded when a party fails to establish an element of its prima facie case. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552. Travelers' motion will therefore be **granted** as to Defendants' abuse of process counterclaim.

### 2. Intentional Tort

Travelers is correct in its argument that there is no claim under Mississippi law for a generic "intentional tort." Intentional tort is a type of claim, not a claim in and of itself. Therefore, because no legal theory has been advanced under this claim, the Court will **grant** Travelers' motion with regards to Defendants' intentional tort counterclaim.

### 3. Intentional Interference with Business Relations

There are four elements of a claim for intentional interference with business relations under Mississippi law:

(1)     The acts were intentional and willful;

(2)     The acts were calculated to cause damage to the plaintiffs in their lawful business;

17

(3)     The acts were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant (which constitutes malice);

(4)     Actual damage and loss resulted.

*MBF Corp. v. Century Bus. Commc'ns, Inc., A Subsidiary of Century Tel. Enters., Inc.*, 663 So.2d 595, 598 (Miss. 1995) (citations omitted).  Travelers contends that Defendants cannot meet their burden of proof on any of these elements.

The acts Defendants allege were done intentionally and willfully in satisfaction of the first element are the filing of the indemnity claim against Hub Refrigeration and the filing of the UCC Financing Statement against the Currys.  The Court assumes *arguendo* that these acts are sufficient to satisfy the "intentional and willful" language of this element as even if they do, Defendants have still failed to establish the second and third elements of this claim.

While Defendants are correct in their argument that calculation does not require a showing of specific intent, for calculation to be inferred as Defendants suggest, there must be evidence showing Travelers committed "a wrongful act without legal or social justification that [it was] certain or substantially certain [would] result in interference with [business relations]" in order to support such an inference.  *Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44, 48 (Miss. 1998) (quoting *Liston v. Home Ins. Co.*, 659 F.Supp. 276, 281 (S.D. Miss. 1986)).  The only acts that Defendants contend Travelers committed was filing a suit against Hub Refrigeration and the UCC Financing Statement filed against the Currys.  Even though the indemnity claim against Hub Refrigeration has been deemed time-barred by the Court, Defendants have not asserted any facts to show that it was a wrongful act for Travelers to file it.  The fact that Hub Refrigeration raised a successful statute of limitations defense does not mean Travelers had no legal justification to bring the claim in the first place.  The Court cannot infer

18

that a claim was calculated to damage Hub Refrigeration's business simply because the claim was filed, even if that claim was ultimately unsuccessful.  If that were the case, then any plaintiff that filed a claim against a business and lost could be liable for an intentional interference with business claim.  Similarly, Defendants have put forward no evidence to show that Travelers's filing of the UCC Financing Statement was a wrongful act which had no legal justification.  Their argument appears to be that because, in their opinion, Travelers will lose its lawsuit, then it has no right to place a lien on the Currys' assets to protect its interests.  Even in the event that Defendants are correct and Travelers does lose its case, this would not mean it had no legal justification for the lien.  Defendants, then, have not met their burden in proving that Travelers' actions were calculated to cause damage to Hub Refrigeration's business.

For similar reasons, Defendants would be unable to establish the third element of their claim.  They have produced no evidence other than conclusional statements to prove that Travelers' actions were done "with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant."  *MBF Corp.*,  663 So.2d at 598. Conclusional allegations such as the ones put forth by Defendants are not enough to defeat summary judgment.  *See Oliver*, 276 F.3d at 744 (citing *Recile*, 10 F.3d at 1097).

Because Defendants failed to establish the second and third elements of their claim, the Court will **grant** Travelers' motion with respect to the intentional interference with business relations counterclaim.

### 4.    Conspiracy

Defendants conspiracy claim rests on an alleged agreement between Travelers and Jones to deny Mr. Curry's delivery of a letter terminating the Currys' indemnity obligations in order to continue the litigation of the indemnity claim.  "Under Mississippi law, a conspiracy is a

19

combination of persons for the purpose of accomplishing an unlawful purpose or a lawful

purpose unlawfully." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004).

The elements of civil conspiracy are: "(1) two or more persons or corporations; (2) an object to

be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more

unlawful overt acts; and (5) damages as the proximate result." *Id.* The third element "requires

an agreement between the co-conspirators." *Id.*

Defendants argue that there are two possible conclusions regarding the delivery of the

termination letter. The first is that Jones lost it and never forwarded it to Travelers. The second

is that it was forwarded to Travelers, who then lost it and is now in agreement with Jones to deny

it was ever received. Defendants concede that there would be no conspiracy in the first situation,

but argue that there would be in the second. They contend that which scenario is true is a factual

issue that must be decided by a jury. However, Defendants advance no evidence to show that the

second scenario is more likely than the first. It is not enough at the summary judgment stage to

suggest that a theory of the case is possible. To defeat summary judgment, Defendants must put

forward specific facts showing they can meet their burden. *See Oliver*, 276 F.3d at 744 (citing

*Recile*, 10 F.3d at 1097) Here, Defendants have pointed to no evidence of an agreement and

have failed to meet their burden on the this element of their conspiracy claim. Travelers' motion

will therefore be **granted** with regards to the conspiracy counterclaim.

Because Defendants have had adequate time for discovery and have failed to make a

showing sufficient to establish essential elements in all of their counterclaims, the Court **grants**

Travelers' Motion for Summary Judgment as to Counterclaims [267]. *See Celotex*, 477 U.S. at

322-23, 106 S. Ct. at 2552.

### III.  MOTION TO STRIKE [297]

In its Motion to Strike [297], Travelers asks the Court to strike George Curry's Affidavit [290-17] and not consider it when ruling on Travelers' Motion for Summary Judgment as to Counterclaims [267].  The Court declines to review the merits of Travelers' motion as the disputed parts of the affidavit deal with Hub Refrigeration's injuries under the counterclaims and the Court ruled in favor of Travelers' on its Motion for Summary Judgment as to Counterclaims [267] without addressing the purported injuries to Hub Refrigeration. Therefore, Travelers' Motion to Strike [297] is **denied as moot**.

### IV.  MOTION TO EXCLUDE [260]

Because the Court has granted summary judgment for Travelers on all the counterclaims Defendants have asserted against it, its Motion to Exclude [260] is now moot.  The expert testimony Travelers wishes to have excluded pertains only to the counterclaims against it.  As such, the motion will be **denied as moot**.

### V.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Hub Refrigeration's Motion for Summary Judgment [259] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Mrs. Curry's Motion for Summary Judgment [264] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion for Summary Judgment for Fraud [269] is **granted in part** and **denied in part**.  It is **granted** as to the following elements of Travelers' fraud claim:  (1) representation, (2) falsity, (3) materiality, (4) Mr. Curry's knowledge of its falsity, (5) Mr. Curry's intent, (6) Traveler's ignorance of its falsity, (7) Travelers' reliance on its truth, and (8) Travelers' right to rely on the representation's truth.  It is **denied** as to the question of injury.

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion for Partial Summary Judgment [263] is **denied.**

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion for Summary Judgment as to Counterclaims [267] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion to Strike [297] is **denied as moot**.

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion to Exclude [260] is **denied as moot**.

SO ORDERED AND ADJUDGED this the 20th day of October, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE