IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 2:13-CV-101-KS-MTP

HUB MECHANICAL CONTRACTORS, INC.,
GEORGE C. CURRY, CINDY B. CURRY,
ARTHUR C. HENDERSON, and
HUB REFRIGERATION & FIXTURES, INC.                           DEFENDANTS

and

GEORGE C. CURRY, JR., CINDY CURRY, and
HUB REFRIGERATION & FIXTURES, INC.           THIRD-PARTY PLAINTIFFS

V.

RICHARD TEB JONES and
BANCORPSOUTH INSURANCE SERVICES, INC.       THIRD-PARTY DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

    This matter is before the Court on Travelers' Motion *In Limine* to Preclude Failure to

Mitigate as a Defense ("Motion to Preclude Defense") [305], Motion *In Limine* Regarding

March 27, 2008 Letter ("Motion to Exclude Letter") [307], and Motion *In Limine* Regarding Not

Characterizing Plaintiff as an Insurance Company ("Motion to Preclude Characterization")

[308].  Having considered the submissions of the parties, the record, and the applicable law, the

Court finds the Motion to Preclude Defense [305] and the Motion to Preclude Characterization

[308] to be well taken and should be granted.  The Court also finds that the Motion to Exclude

Letter [307] should be denied.

**I.  BACKGROUND**

Travelers filed its original complaint against George C. Curry, Jr., ("Mr. Curry") and Mrs. Curry (collectively "the Currys") on May 15, 2015.  Travelers added Hub Refrigeration & Fixtures, Inc., ("Hub Refrigeration") as a defendant in its Amended Complaint [184] on April 9, 2015.  Travelers contends that all three are liable to indemnify its losses under the construction bonds issued to Hub Mechanical Contractors, Inc., ("Hub Mechanical") in July 2009, under an Indemnity Agreement [184-1] executed in February 2005.  The Currys' liability stems from their alleged personal execution of the agreement, while Hub Refrigeration's liability flows from Mr. Curry's ownership, as the agreement provides that indemnitors under the agreement include any "legal entity in which one or more [of the Currys] are involved."  (*See* Indemnity Agreement [184-1] at p. 1.)

On February 11, 2005, Mr. Curry executed the Indemnity Agreement through Richard Teb Jones ("Jones"), an agent of Travelers.  Mr. Curry admits to having forged his wife signature on the advice of Jones, as he knew she would not consent to signing and Travelers would not issue bonds for Hub Mechanical without her signature.  (*See* Mr. Curry Depo. [270-3] at 25:19-23.)  Mr. Curry, though, contends that he sent a letter to Jones terminating the Indemnity Agreement in March 2008.  Travelers and Jones both deny having received this letter. (*See* Jones Depo. [290-14] at 77:9-17.)

In July 2009, Travelers issued two bonds, a Payment Bond and a Performance Bond, to Hub Mechanical after it entered into a subcontract agreement with Rod Cooke Construction ("Rod Cooke").  Travelers brought suit for the indemnification of its losses under these bonds after Hub Mechanical defaulted, bringing claims for reimbursement of all amounts paid to Hub Mechanical's subcontractors, suppliers, and materialmen on the Rod Cooke Project, for attorneys' fees and costs, and for fraud.  An indemnity claim was also filed against Hub

Refrigeration in Travelers' Amended Complaint [184] in April 2015.  In their Amended Answer [257] to the Amended Complaint, the Currys and Hub Refrigeration (collectively "Defendants") filed counterclaims against Travelers for abuse of process, intentional tort, intentional interference with business relations, and conspiracy.

The Court has since granted Hub Refrigeration and Mrs. Curry's motions for summary judgment and have dismissed them as parties from the case.  The Court has also granted summary judgment in favor of Travelers on all counterclaims.  Travelers now brings these motions *in limine* in anticipation of trial.

## II. DISCUSSION

### A.      Motion to Preclude Defense [305]

Travelers argues that Defendants are precluded from raising the defense of failure to mitigate damages because they did not raise it as an affirmative defense in their pleadings. Defendants contend that the defense should be allowed because failure to mitigate is not always an affirmative defense and because equity demands the defense to be heard at trial.

Federal Rule of Civil Procedure 8(c)(1) states that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  The Fifth Circuit has held that failing to plead an affirmative defense in a timely manner "may result in waiver and the exclusion of the defense from the case." *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (citing *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 342-43 (5th Cir. 1988)).  When a federal court's jurisdiction rests in diversity, "substantive state law determines what constitutes an affirmative defense." *See id.* (citations omitted).

Under Mississippi law, failure to mitigate damages is an affirmative defense. *Mason v. S. Mortg. Co.*, 828 So.2d 735, 739 (Miss. 2002) (citing *Wall v. Swilley*, 562 So.2d 1252, 1258

3

(Miss. 1990)).  Defendants cite *Carrizales v. State Farm Lloyds* for their contention that failure to mitigate is not always an affirmative defense.  518 F.3d 343 (5th Cir. 2008).  The Fifth Circuit in *Carrizales*, however, was applying Texas law.  *See id.* at 350.  The Mississippi Supreme Court has clearly stated that failure to mitigate damages is an affirmative defense.  *Mason*, 828 So.2d at 739 (citing *Wall*, 562 So. 2d at 1258).  It does not matter that mitigation of damages is not listed as an affirmative defense in Rule 8(c)(1), as the list is not meant to be exhaustive and the rule states that "a party must affirmatively state *any* . . . affirmative defense."  Fed. R. Civ. P. 8(c)(1) (emphasis added).  Therefore, failure to mitigate damages is an affirmative defense that Defendants failed to raise in their pleadings, prompting the Court to find that they have waived it as a defense.

The principles of equity also do not require the Court to allow the affirmative defense of failure to mitigate in this case.  Defendants argue that both sides have already conducted discovery on mitigation and that, despite Travelers' formal objection to discovery on this issue, it has consented through its actions for the defense to be brought.  Regardless of whatever discovery that has been conducted, Defendants have pointed to no particular actions by Travelers that would override their objection to the defense.  Furthermore, there is no sense of unfairness in the exclusion of this defense which might prompt the Court to invoke equity to allow the defense.  Defendants knew at least as of May 20, 2015, that Travelers objected to the use of a failure to mitigate defense because it was not pleaded in Defendants' answer, which put Defendants on notice to this deficiency in their pleadings.  (*See* Travelers Depo. [306-6] at pp. 123-24.)  Defendants filed their Amended Answer and Counterclaim to Amended Complaint [257] on June 11, 2015, and failed once again to include the mitigation defense.  Because of this

failure, the Court concludes that they have waived a failure to mitigate defense and will not be allowed to argue the defense at trial.

Therefore, the Court **grants** Travelers' Motion to Preclude Defense [305].

## B.      Motion to Exclude Letter [307]

Travelers makes three arguments for the exclusion of the March 27, 2007, letter.  First, it claims that it is irrelevant evidence as the letter was insufficient to terminate the Indemnity Agreement.  Second, it argues that the letter pertains only to the Currys' liability under the Performance Bond, and not the Payment Bond or the associated attorneys' fees and litigation expenses.  Third, Travelers contends it cannot be used to relieve Hub Refrigeration from liability.  The Court has already awarded summary judgment to Hub Refrigeration and Mrs. Curry, and dismissed them both from the case.  Therefore, the only arguments left are the ones pertaining to Mr. Curry's liability under the Indemnity Agreement.

Under the terms of the Indemnity Agreement, termination takes effect thirty days after Travelers is "giv[en] written notice . . . of Indemnitors' intent to terminate."  (*See* Indemnity Agreement [310-1] at p. 2.)  The question of how this contractual term should be construed is a question of law which the Court must decide.  *See Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So.2d 107, 109 (Miss. 2005) ("Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder.") (citations and internal quotations omitted).  Because Travelers prepared the agreement, the Court, applying Mississippi law, construes any contractual ambiguity against it as the preparing party.  *See Banks v. Banks*, 648 So.2d 1116, 1121 (Miss. 1994) ("There is also the universal rule of construction that when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it.") (citations omitted).  The Court

finds nothing in the language of the agreement which specifies any particular language needed to express the intent to terminate.  As such, the Court finds that, under the terms of the Indemnity Agreement, any written statement which gives notice of an intent to terminate would be sufficient to terminate Mr. Curry's liability under the Indemnity Agreement.

Mr. Curry claims that the following language from his letter dated March 27, 2008, gave written notice of his intent to terminate the Indemnity Agreement:

> Teb,
> I have sold all interest that I may have owned in Hub Mechanical Contractors.  As per Stacy's request I summit [sic] this letter as official Notice that George Curry Jr. and Cindy Curry will no longer be responsible for any performance bonds issued on Hub Mechanical Contractors behalf after March 27, 2008.

(*See* Termination Letter [310-2].)  Under Federal Rule of Evidence 401, this letter, as the purported written notice, is relevant to whether Mr. Curry conveyed his written intent to terminate.  Therefore, it will not be excluded from trial.

Furthermore, as the Court stated in its previous order denying Travelers' Motion for Partial Summary Judgment [263], Mr. Curry has presented sufficient evidence showing that, at the time of the relevant events, § 85-7-185 of the Mississippi Code, though it has since been repealed, could have been taken to mean that a performance bond is at times both a performance bond and a payment bond.  The letter is relevant under Rule 401 to determine whether an intent to terminate the Indemnity Agreement with regards to both types of bond was conveyed to Travelers.  As such, Mr. Curry will not be precluded from arguing that the letter disclaimed his indemnity liability as to the Payment Bond.

The Court also finds that the letter is relevant to whether Mr. Curry is liable to Travelers for attorneys' fees and expenses, as Mr. Curry's liability for these costs are based in his liability under the bonds.  Mr. Curry is liable for attorneys' fees and expenses under the Indemnity

Agreement's definition of loss, which holds Mr. Curry liable for "[a]ll loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including . . . enforcing by litigation or otherwise any provisions of this Agreement . . . ."  (*See* Indemnity Agreement [310-1] at p. 1.)  While an award of attorneys' fees and expenses would be appropriate if Mr. Curry was found liable under the agreement for losses under the bonds, the Court would not award such costs under this language merely because Travelers brought suit attempting to enforce the agreement against him. Liability for attorneys' fee and expenses, therefore, is tied to liability for losses on the subject bonds, to which the letter is relevant.  Mr. Curry, then, will be allowed to argue at trial the letter's relevancy with regards to attorneys' fees and expenses.

Therefore, the Court **denies** Travelers' Motion to Exclude Letter [307].

### C.      Motion to Preclude Characterization [308]

In its Motion to Preclude Characterization [308], Travelers requests the Court preclude Defendants from characterizing it as an insurance company.  All parties agree that Travelers is a surety company and not an insurance company.  Defendants oppose the motion on the grounds that they have no intention of characterizing Travelers as an insurance company and an order precluding it would be superfluous.  As Defendants otherwise have no argument against the motion, the Court **grants** Travelers' Motion to Preclude Characterization [308].

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Travelers' Motion to Preclude Defense [305] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion to Exclude Letter [307] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Travelers' Motion to Preclude Characterization [308] is **granted**.

SO ORDERED AND ADJUDGED this the 20th day of October, 2015.

s/ Keith Starrett
UNITED STATES DISTRICT JUDGE